# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MIRIAM ROVNER, individually, and**<br>    **through her Next Friends,**<br>    **NEIL AND NINA ROVNER; and** | : *Electronically Filed*<br>:<br>:<br>: |
| **NEIL and NINA ROVNER,**<br>    **Individually,** | : **No. ___ CV - 2011**<br>:<br>: |
| **PLAINTIFFS** | :<br>: |
| **v.** | :<br>: |
| **KEYSTONE HUMAN SERVICES** | :<br>: |
| **DENNIS W. FELTY, President**<br>    **Keystone Human Services**<br>    **(KHS)** | :<br>:<br>:<br>: |
| **CHARLES J. HOOKER, III**<br>    **Senior Vice President, KHS,**<br>    **CEO, KHSI** | :<br>:<br>:<br>: |
| **JANET K. KELLEY, VP, Quality**<br>    **And Clinical Services, KHS,**<br>    **Senior VP, Operations, KSS** | :<br>:<br>:<br>: |
| **ANN H. MOFFITT, CEO,**<br>    **Keystone Partnership; VP**<br>    **Community Development, KHS** | :<br>:<br>:<br>: |
| **MICHAEL POWANDA, Executive**<br>    **Director, KHS** | :<br>:<br>: |
| **PATRICIA SIPE, CEO, Keystone**<br>    **Children & Family Services** | :<br>:<br>: |
| **ANN MARIE MELLETT,**<br>    **Group Home Service Director, KHS** | :<br>:<br>: |
| **JOLENE FOGELSANGER,**<br>    **Program Director, KHS** | :<br>:<br>:<br>: |

|                                              |   |
| -------------------------------------------- | - |
| **AND**                                      | : |
|                                              | : |
| **DEPARTMENT OF PUBLIC WELFARE**             | : |
|                                              | : |
| **GARY D. ALEXANDER,**                       | : |
|    **Secretary, Department of** | : |
|    **Public Welfare, individually** | : |
|    **And in his official capacity** | : |
|                                              | : |
| **KEVIN FRIEL, Deputy Secretary,**           | : |
|    **Office of Disability Programs,** | : |
|    **Individually and in his official** | : |
|    **Capacity**               | : |
|                                              | : |
| **JOHN WITTE, Director, Central**            | : |
|    **Regional Office of Disability** | : |
|    **Programs**               | : |
|                                              | : |
|    **DEFENDANTS**             | : **JURY TRIAL DEMANDED** |

---

## COMPLAINT

---

## I.   INTRODUCTION

1. Miriam Rovner ("Plaintiff") is presently 29 years of age and is an individual with a disability who brings this action under the Americans with Disabilities Act and other federal civil rights statutes to challenge the decision of Defendant Keystone Human Services ("KHS") and its managing agents to discharge her from her home in retaliation for her parents' advocacy on her behalf. Plaintiff also challenges the complicity of officials in the Department of Public Welfare in those actions. Plaintiff seeks immediate preliminary injunctive relief pursuant to FRCP 65 (a), and a Temporary Restraining Order

("TRO") pursuant to FRCP 65 (b) to prevent KHS, which has formally notified her that effective December 20, 2011, she can no longer reside in her current group home.  **Exhibit "A".**

2.  Miriam Rovner resides at her current residence since January 8, 2010, a home operated by KHS and funded by the Pennsylvania Department of Public Welfare ("DPW") pursuant to a Title XIX Consolidated Waiver.

3.  Miriam's home is also uniquely customized to accommodate the religious beliefs and practices of the Jewish faith for the individuals residing in this home.

4.  KHS' rationale for discharging Miriam is due to "…the level of conflict between Keystone and your parents prevents us from effectively implementing your individual service plan and the individual service plans for others residing in the home, and is preventing others from peacefully living in the home." See **Exhibit A**.

5.  Neil and Nina Rovner allege and therefore aver that the November 21, 2011, letter from KHS and copied to Dauphin County personnel as well as personnel from the Pennsylvania Department of Public Welfare ("DPW") constitutes retaliation, coercion, harassment and threats upon them for zealously advocating on behalf of their daughter.

6.  Plaintiffs' allege that Defendants' actions and inactions violate Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq. ("Section 504"), and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. ("ADA") and the Due Process and Equal Protection Clauses of the United States Constitution and 42 U.S.C. § 1983.

7.  Plaintiff Miriam Rovner is an otherwise qualified handicapped individual under the Rehabilitation Act of 1973 and a qualified individual with disabilities under the Americans with Disabilities Act.

8.  Plaintiff MIRIAM ROVNER brings this action for preliminary injunctive relief in order for her to remain in her home, the TRO to prevent KHS from removing Miriam from her home on December 20, 2011, and damages she incurred and continues to incur because Defendants discriminated against her and her Parents because her Parents have advocated on her behalf to ensure Miriam's safety, health and well-being in violation of her rights under Section 504 of the Rehabilitation Act, Title II and III of the ADA and Section 1983.

9.  All Defendants' actions and inactions violate Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq. ("Section 504"), the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. ("ADA"), specifically Title II and III, and the Due Process and Equal Protection Clauses of the United States Constitution and 42 U.S.C. § 1983.

## II.    JURISDICTION AND VENUE

10. Jurisdiction is predicated upon 28 U.S.C. § 1331, as this action arises under the laws and Constitution of the United States.  Jurisdiction is further predicated upon 42 U.S.C. 12133, 20 U.S.C. § 794 (a) and 42 U.S.C. § 1343.

11. Venue is appropriate in this District Court as all Defendants' offices are located in Harrisburg, Pennsylvania and all Defendants' actions complained of herein have taken place in Dauphin County, Harrisburg, Pennsylvania.


## III. PARTIES

12. MIRIAM ROVNER, Plaintiff, is presently 29 years of age and resides in Harrisburg, Pennsylvania.

13. NEIL AND NINA ROVNER, Plaintiffs, reside in Harrisburg, Pennsylvania.

14. KEYSTONE HUMAN SERVICES ("KHS") is a private, non-profit agency located at 940 East Park Drive, Harrisburg, PA 17111, that operates a large number of community-based programs for persons with intellectual disabilities, including community living arrangements.  KHS has provided residential services to Miriam Rovner in the home where she currently resides since January 8, 2010.  KHS is a recipient of federal financial assistance within the meaning of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §

794(b)(2)(B), and is a place of public accommodation, and a contractor of the Department of Public Welfare on whose behalf it  operates a public service, the Title XIX Consolidated Waiver, as defined in Title II and III of the ADA.

15. Defendant DENNIS W. FELTY, is President of KHS since 1972.

16. Defendant CHARLES J. HOOKER, III, is Senior Vice President, KHS, and Chief Executive Officer of KHSI, responsible for the operations and services of the organization.

17. Defendant JANET K. KELLEY, is Vice President of Quality and Clinical Services for KHS, and Senior Vice President of Operations for KSS. She is responsible for clinical, quality and staff development functions of KHS and for subsidiary corporations.

18. Defendant ANN H. MOFFITT, is Chief Executive Officer for Keystone Partnership and Vice President of Community Development for KHS. She is responsible for fundraising and public relations functions in community outreach and volunteer recruitment and training for KHS and its subsidiary corporations.

19. Defendant MICHAEL POWANDA is the former Executive Director for KHS, relieved of his position on or about December 12, 2011. He was responsible in part for the operation of Plaintiff's group home.  Defendant Powanda sent the letter to Plaintiffs' on November 21, 2011, notifying them that Miriam would

be discharged from her home in 30 days, on December 20, 2011, and threatened that if Plaintiffs' parents would pursue any action prior to December 20, 2011, that KHS would terminate Miriam's placement earlier.

20. Defendant PATRICIA SIPE has replaced Michael Powanda, the former Executive Director for KHS, who was relieved of his position on or about December 12, 2011. Defendant SIPE has indicated that the letter of November 21, 2011, is still in effect and Miriam's discharge is scheduled to occur on December 20, 2011.

21. Defendant ANN MARIE MELLETT is the Services Director for KHS and oversees the supervision of approximately 35 group homes operated by KHS. She is the supervisor of Defendant Jolene Fogelsanger.

22. Defendant JOLENE FOGELSANGER is the Program Director for KHS and supervises the day to day operation, management and implementation of programs for Miriam's group home located on Second Street, Harrisburg, PA. Defendant FOLGERSANGER on numerous occasions compromised Miriam's health, safety and well-being by adjusting Miriam's medication without approval from Miriam's parents or the psychiatrist, and neglected Miriam's needs. Defendant Fogelsanger has caused and created conflict between Miriam, her family, and KHS to the degree that reliance on FOGELSANGER's

information caused KHS to issue a notice to Miriam and her Parents on November 21, 2011, a notice of 30-day discharge of service.

23. The DEPARTMENT OF PUBLIC WELFARE ("DPW") is the single state agency responsible under Title XIX of the Social Security Act for administration of Pennsylvania's Medical Assistance or Medicaid program, including the Consolidated Waiver. In administering the program, DPW enters into provider agreements with private agencies, including KHS, to provide services in return for payment from funds made available through the Consolidated Waiver by the Center for Medicare and Medicaid Services ("CMS") of the United State Department of Health and Human Services ("DHS"). As a condition of granting approval of DPW's home and community-based waivers, CMS requires DPW to assure the safety and well-being of waiver beneficiaries and to assure that providers of waiver services maintain adequate standards of quality. DPW has the authority to require that providers of home and community based services honor the rights of waiver recipients, including the right to freedom from retaliation and reprisal. On information and belief, DPW has a policy and practice of allowing providers to discharge waiver recipients at will, even for purposes that are unlawful and retaliatory. DPW is responsible for providing Fair Hearings as required by the Social Security Act for Medical Assistance beneficiaries whose services have

been terminated, suspended or reduced; however, it has a policy and practice of refusing to provide Fair Hearings to beneficiaries who have been discharged from waiver-funded community living arrangements, and has refused to provide a Fair Hearing to Miriam Rovner.

24. Defendant GARY ALEXANDER is the Secretary of Public Welfare for the Commonwealth of Pennsylvania and is responsible for the overall operation, management and implementation of all program and services receiving federal and state funds for persons with intellectual and other disabilities, including all Title XIX home and community based waiver programs, consistent with federal laws including the Americans with Disabilities Act and the Rehabilitation Act. He is responsible for supervising Defendant Kevin Friel, the Deputy Secretary for the Office of Disability Programs. Defendant Alexander is sued in his official and individual capacities.

25. Defendant KEVIN FRIEL, is the Deputy Secretary of Public Welfare for the Commonwealth of Pennsylvania for the Office of Disability Programs (ODP). He is responsible for the day to day operation, management and implementation of all program and services receiving federal and state funds for persons with intellectual and other disabilities, including all Title XIX home and community based waiver programs in the Commonwealth, in a manner consistent with federal law, including the Americans with Disabilities

Act and the Rehabilitation Act. He is sued in his official and individual capacities.

26. Defendant JOHN WITTE, is the Program Director for the Central PA Regional Office for the Office of Disability Programs (ODP). He is responsible for the day to day operation, management and implementation of all program and services receiving federal and state funds for persons with intellectual and other disabilities, including all Title XIX home and community based waiver programs in the Commonwealth, who reside in the Central PA region, consistent with federal law including the Americans with Disabilities Act and the Rehabilitation Act. He is sued in his official and individual capacities.

## IV.     OVERVIEW OF THE APPLICABLE FEDERAL LAWS

27. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subjected to discrimination by such entity." 42 U.S.C. § 12132.

28. Regulations implementing Title II of the ADA prohibit discrimination and retaliation.

29. ADA regulations implementing Title II also provide that a "public entity may not, directly or through contractual or other arrangements, utilize criteria or

other methods of administration: (i) that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability; [or] (ii) that have the purpose and effect of defeating or substantially impairing accomplishment of the objectives of the entity's program with respect to individuals with disabilities…" 28 C.F.R. § 35.130(b)(3).

30. The requirements of Section 504 of the Rehabilitation Act, which apply to all federally-assisted programs, are substantially the same as the requirements of the Americans with Disabilities Act, in that Section 504 prohibits discrimination and retaliation against persons with disabilities and their associates.

31. The Equal Protection and Due Process Clauses of the United States Constitution provide Plaintiff with substantive protection from unequal treatment, from discrimination, retaliation and deliberately indifferent neglect of her health, safety and well-being.


## V. <u>FACTUAL ALLEGATIONS</u>

32. Plaintiff Miriam Rovner is currently 29 years of age and diagnosed with Rubinstein-Taybi Syndrome, Moderate Intellectual Disabilities, Obsessive-Compulsive behavior, aggression, Autism and a Mood Disorder.

33. Plaintiff Miriam Rovner currently resides in a group home operated by KHS which is uniquely designed for individuals of the Jewish faith.

34. Plaintiff resided in this home beginning January 8, 2010, and continues to reside there.

35. Plaintiff prefers this group home as her choice of residence, has adjusted very well to this home, to staff and to the other residents who live in the home.

36. Plaintiffs' Neil and Nina Rovner are very actively involved in their daughter's life, and are zealous advocates for her health, safety and well-being.

37. Plaintiffs have created various programs for people with disabilities which would allow their daughter and others to enjoy.  Namely, Plaintiffs' developed a social and recreational program called "Hope Springs Farm" which provides people with intellectual and other disabilities to experience and participate in farm activities. Plaintiffs' plan to expand this program to include a horticultural component.

38. In August 2011, KHS gave 30 days written notice to Plaintiffs of their "unwillingness" to continue to provide staff to operate the Hope Springs Farm program, with the date of termination being October 14, 2011.

39. No notice of appeal or form to request a "Fair Hearing" was provided by DPW/ODP when KHS notified Plaintiffs that they were suddenly and

unexpectedly no longer a 'willing provider' for the Hope Springs Farm program.

40. The effect of KHS' abrupt termination as a 'willing provider' to the Hope Springs Farm program on or about October 14, 2011, caused the elimination of a day program activity for Miriam, plus fifteen (15) other individuals with disabilities who participated in this program five (5) days a week from 9:00am-3:00pm daily. Hope Springs Farm program was included as a goal in Miriam's Individual Support Plan ("ISP") through Dauphin County Human Services as of the meeting date of August 4, 2011, with implementation of the ISP to commence on October 28, 2011, for one year duration. Miriam has been without a day program since October 14, 2011.

41. Concurrently, during the late Summer (August) and Fall (September and October) of 2011, Plaintiffs' Neil and Nina Rovner became aware that KHS staff were not responding to Miriam's complex behavioral needs (e.g., failed to send psychotropic medication home with Miriam when she stayed her family during the flood, failed to notify family that Miriam had suddenly stopped eating and drinking as a result of being in a rapid cycling period, resulting in Miriam being rushed to the emergency room after she fainted in a store due to severe dehydration) and filed complaints of neglect against KHS, specifically

against the Program Manager of the group home, Defendant Jolene Fogelsanger.

42. Specifically, Plaintiffs' were concerned about the lack of reporting of Miriam's rapid cycling behaviors (i.e., sleeplessness or no sleep, being a significant precursor to behavioral changes) in a timely manner and communication with them especially during Miriam's periods of mood swings and manic phases. Communicating Miriam's behavior cycles to her family is critical:

> (i) Miriam's family brings her home for several days when she begins to enter a rapid cycling behavior episode in order for them to manage and avoid a full-blown behavior episode; therefore, it is critical for the Parents to know how Miriam is responding in the group home;

> (ii) Miriam's parents observe her behavior at home and the manage the administration of medication during these periods;

> (iii) Miriam's parents must be informed of her physical health and well-being during these mood swings in order to prevent any risk of danger to Miriam's physical health, such as dehydration, when Miriam refuses to eat or drink during the rapid cycling periods;

> (iv) Miriam's parents will take her to the doctor's in order to avoid a full-blown behavior episode;

(v) Miriam requires intense supervision during the periods of behavior cycling and at times, must be apart from other residents in her home. Miriam's parents bring her to their home for several days during this time.

43. On or about October 13, 2011, KHS held a "Team Review" meeting that did not include Miriam's parents for the purpose of reviewing when Miriam's parents should be called regarding her "behavior cycles". **Exhibit B**.

44. Despite this team discussion, Defendant Jolene Fogelsanger failed to notify Plaintiffs' that Miriam was entering a behavior cycle and required additional medication to control the mood swings which results in awakening at unusually early morning hours.

45. Plaintiffs' have possession of Miriam's behavior medication, per recommendation of Dr. Fueyo that the parents monitor Miriam's behavior cycles, and upon learning of Miriam's behavior cycle, applied a patch and one half (1 ½) of medication pursuant to the doctor's order.

46. Later, Plaintiffs' learned that Defendant Jolene Fogelsanger had removed one-half of the patch applied by the parents without obtaining permission of the parents to remove the patch and without the treating psychiatrist's order to do so.

47. Plaintiffs' were very upset by this unilateral action taken by Defendant Foglesanger without being notified or Miriam's physician being consulted. Plaintiffs' confronted Defendant Fogelsanger about the importance of following proper procedures and protocol for Miriam during the behavior cycles.

48. At some point, Defendant Fogelsanger and other staff at the Second Street group home, next wrote a "Visitors Guide when Visiting Second St.", which sets forth very specific restrictions upon visitors when approaching and entering the group home. Examples of such 'rules' include: "do not say hello for all to hear", "speak in a low monotone voice." **Exhibit C**.

49. Plaintiffs' believe and therefore aver that these guidelines were established and intended specifically to target Miriam's parents.

50. On or about November 21, 2011, nearly five (5) weeks after the incident of October 13, 2011, a letter addressed to Miriam at her Second Street home, with a copy to Plaintiffs and various others, was received notifying Miriam that KHS would be discharging her effective thirty (30) days from the date of the letter. **Exhibit A.**

51. No notice of appeal or any procedural due process rights were provided to Plaintiffs.

52. On or about November 23, 2011, Plaintiffs' reported this information to Miriam's psychiatrist, Dr. Michael Fueyo, greatly concerned for her well-being and the difficulty of having to transition to a different home. Dr. Fueyo opined that "[I]t would be in Mimi's best interest to maintain the stability of her current placement." **Exhibit D.**

53. To the best of Plaintiffs' knowledge and belief, KHS failed to contact Miriam's physician to determine the effect of a significant and life-altering transition from a home which Miriam's enjoys, belongs and chooses to remain indefinitely.

54. Should the Court not grant Plaintiffs' request for immediate injunctive relief and temporary restraining order, Miriam Rovner will be removed against her will from the Second Street home.

55. On November 29, 2011, Nina Rovner obtained a note from her physician that she would be unable to be Miriam's primary caretaker on a 24/7 basis due to her own chronic health conditions. **Exhibit E**.

56. Plaintiff Neil Rovner, Esquire, works fulltime and operates a large law firm and cannot care for Miriam on a fulltime basis.

57. Plaintiffs contacted their business attorney, Steve Schiffman, Esquire, who works with them in matters pertaining to the "Hope Springs Farm."

**58.** Attorney Schiffman contacted Defendant Michael Powanda about the letter of November 21, 2011.

**59.** Attorney Schiffman reported to Plaintiffs' that KHS would "rescind the letter" provided that Dauphin County Human Services would send a letter to KHS requesting that the letter be withdrawn.

**60.** Plaintiffs' contacted Dauphin County Human Services who were unaware of this proposal and told plaintiffs that they lack authority to require a provider to refrain from discharging a consumer. Consequently, the county agency never wrote a letter to KHS.

**61.** Subsequently, Plaintiffs' retained the services of the undersigned to assist them in seeking intervention for Miriam to remain in her current home, and on their behalf, so that KHS would refrain from further retaliation.

**62.** Plaintiffs' were afraid to contact anyone from KHS after receipt of the letter as Defendant Powanda threatened to "terminate the relationship [with Miriam] early in the event that your parents take further actions that compromise our ability to provide services to you or to others."

**63.** Plaintiffs' believed that they could not contact anyone from KHS for fear of immediate reprisal upon Miriam and that she would be immediately discharged from her home.

64. The undersigned contacted personnel from Dauphin County Human Services agency and arranged a meeting to discuss options so Miriam would not be discharged from her home.

65. On December 15, 2011, Plaintiffs Neil and Nina Rovner, along with the undersigned, meet with personnel from Dauphin County Human Services.

66. Dauphin County indicated that the only role they have in this matter was to offer the following: (1) a list of willing and qualified providers as a substitute for KHS; (2) emergency placement; or (3) placement of Miriam's name on a statewide vacancy list, which means that if a placement became available, Miriam may be required to relocate out of Dauphin County and away from her Parents and friends.

67. Dauphin County Human Services personnel indicated that placements in Dauphin County are at full capacity; therefore, no homes exist for Miriam to relocate to in the Harrisburg area. To the best of Plaintiffs' knowledge, the number of vacancies in residential programs throughout the Commonwealth is so small that no realistic prospect exists that Miriam could receive services anywhere near her parents' home.

68. Plaintiffs' stated their preference and Miriam's choice is to remain in her current home.

**69.** Dauphin County provided Plaintiffs' with a "Notice for a Fair Hearing"; however, the agency reported to plaintiffs that the ODP, Central Region, by Defendant John Witte, believes that a "fair hearing" is not available for waiver beneficiaries who have been discharged by their current residential provider but still remain eligible for waiver services.

**70.** ODP refused to provide Plaintiffs with a Notice for Fair Hearing, and have not intervened in any way on Miriam's behalf.

**71.** Plaintiffs' believe and therefore aver that on December 20, 2011, residential services to Miriam will be "discontinued, terminated, suspended or reduced."

72. Defendants' have acted with deliberate indifference to Plaintiffs' statutory and constitutional rights in defiance of settled, undisputed law.

73. Plaintiffs Neil and Nina Rovner have been disparaged and derided because of their advocacy for their daughter's interests and have experienced retaliation and reprisal because of their insistence that her medical and behavioral needs be met.   Miriam Rovner has also experienced retaliation because of her parents' advocacy on her behalf.

74. Plaintiffs believe and therefore aver that they suffered discrimination as a result of the intentional and negligent actions of the Defendants, especially Defendants Michael Powanda, now Patricia Sipe and Jolene Fogelsanger, by

denying Miriam access to a place of public accommodation effective December 20, 2011, and the deliberate indifference to the rights of Plaintiffs.

75. As a result, on December 20, 2011, Plaintiff Miriam Rovner will be removed from her home as a result of Defendants' position that Miriam's parents interfere with KHS.

76. Plaintiffs seek a Temporary Restraining Order ("TRO") in order to prevent Miriam's removal from her home on December 20, 2011, and to place her back in a 'status quo' position prior to receiving the letter of discharge from KHS.

77. Plaintiff Miriam Rovner will suffer irreparable harm, injury, loss and damage if the TRO is not granted as she will be removed against her will and that of her parents from her home of nearly 2 years.

78. Plaintiff will suffer irreparable harm, injury, loss and damage if the TRO is not granted in that another Jewish faith-based group home is not available in Dauphin County, no group home availability exists in Dauphin County, and few, if any, group home placements exist throughout the state.

79. Plaintiffs' believe and therefore aver that granting the TRO will not result in any harm to any Defendants in that Plaintiffs seek relief from this Court to maintain Miriam in her current home and to enjoin KHS from implementing Miriam's removal from her home on December 20, 2011.

80. Plaintiffs' believe and therefore aver that the public interest favors such relief in that providers who are recipients of federally funded assistance should be prohibited from exercising their discretion to terminate services to individuals who are vulnerable members of society merely because families who zealously advocate for their family member are perceived to be a nuisance or an annoyance for providers.

81. Plantiffs' believe that it is in the public's best interest to mandate that places of public accommodations follow anti-discrimination, anti-retaliation procedures.


## VII.   CAUSE OF ACTION

### Count I
### Violations of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 795, et seq.

82. Paragraphs 1 through 81 are incorporated as if fully set forth herein.

83. Defendants have intentionally and purposefully violated the rights of Miriam Rovner secured by Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794, and 42 C.F.R. 84.4(b)(1), both directly and through contractual and other arrangement,

(a)     Denying Miriam Rovner the opportunity to participate in or benefit from services under the Consolidated Waiver and the community residential services operated by Keystone Human Services;

(b)     Afford Miriam Rovner an opportunity to participate in or benefit from
        the above aids and services that is not equal to that afforded others;

(c)     Providing Miriam Rovner with aid, benefits, or services that are not as
        effective as that provided to others;

(d)     Limiting Miriam Rovner in the enjoyment of any right, privilege,
        advantage, or opportunity enjoyed by others receiving home and
        community based waiver services.

(e)     Retaliating against Miriam Rovner because Neil and Nina Rovner
        have opposed and protested acts that deny Miriam Rovner the benefits
        of the Consolidated Waiver Program and the residential services
        operated by Keystone Human Services, and because they have aided
        and encouraged Miriam Rovner in the  exercise and enjoyment of  her
        rights under those programs;

(f)     Utilizing criteria or methods of administration (i) that have the effect
        of subjecting qualified handicapped persons to discrimination on the
        basis of handicap, (ii) that have the purpose or effect of defeating or
        substantially impairing accomplishment of the objectives of the
        recipient's program or activity with respect to handicapped persons, or
        (iii) that perpetuate the discrimination of another recipient if both

recipients are subject to common administrative control or are

agencies of the same State.


## Count II
## Claim Under Title II and III of the Americans with Disabilities Act of 1990, as Amended by the Americans with Disabilities Amendment Act
## 42 U.S.C. §§ 12181-12189

84.  Paragraphs 1 through 83 are incorporated as if fully set forth herein.

85. Defendants have intentionally and purposefully violated the rights of

Miriam Rovner assured by the Americans with Disabilities Act of 1990, 42 U.S.C.

§ 12131 *et seq*.  28 C.F.R.  § 35.130 (the regulation applicable to public services)

and 28 C.F.R. Part 36, Subpart B, by:

(a)    Subjecting Miriam Rovner to discrimination on the basis of her

disabilities.

(b)    Denying Miriam Rovner the opportunity to participate in, and the

benefits of, public services and programs that are as effective and

meaningful as those delivered by Defendants to other home and

community based waiver participants.

(c)    Failing to make reasonable modifications in policies, practices and

procedures to enable Miriam Rovner to participate in Defendants'

services and programs.

(d)     Limiting Miriam Rovner's enjoyment of the right and opportunity to receive services in her community living arrangement.

86.   Defendants have intentionally and purposefully violated the rights of Miriam Rovner, Neil Rovner and Nina Rovner assured by the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 *et seq*. and 28 C.F.R. § 36.206, by:

(a)     Subjecting Miriam Rovner to discrimination because Neil and Nina Rovner have opposed acts that deny Miriam Rovner the benefits of the Consolidated Waiver Program and the residential services operated by Keystone Human Services;

(b)     Coercing, intimidating, threatening, and interfering with Miriam Rovner's enjoyment of her rights under the Consolidated Waiver Program and the residential services operated by Keystone Human Services because Neil and Nina Rovner have aided and encouraged Miriam Rovner in the exercise and enjoyment of her rights under those programs;

(c)     Threatening and intimidating Neil and Nina Rovner to prevent them from contesting the discharge of Miriam Rovner from the residential services operated by Keystone Human Services;

(d)    Coercing Neil and Nina Rovner to deny or limit the benefits, services, or advantages to which  Miriam Rovner is entitled as a person with disabilities;

(e)    Threatening, intimidating, or interfering with Miriam Rovner's efforts to use the goods, services, facilities, privileges, advantages and accommodations of a public accommodation;

(f)     Intimidating or threatening Neil and Nina Rovner because they have assisted and encouraged Miriam Rovner in the exercise of her rights;

(g)    Retaliating against Neil and Nina Rovner for participating in actions to enforce the Americans with Disabilities Act.


**Count III**
**Claim Under Section 1983 for Violation of Procedural Due Process Under the Fourteenth Amendment to the United State Constitution**
**42 U.S.C. § 1983**

87.  Paragraphs 1 through 86 are incorporated as if fully set forth herein.

88. Defendants under color of law have deprived Plaintiffs of federal statutory rights guaranteed to them by § 504, the ADA, and in violation of 42 U.S.C. § 1983.

89.  Defendants have a policy, custom, or practice of engaging in disparate and unlawful activities complained of herein, as Defendants have deliberately and maliciously terminated Miriam from her day program on October 14, 2011,

now pursue termination of her residential program on December 20, 2011, in retaliation of the involvement and advocacy of Miriam's parents, Plaintiffs Neil and Nina Rovner.

## Count VI : Attorneys' Fees and Costs of Litigation

90.  Paragraphs 1 through 89 are realleged as if fully set forth herein.

91. Plaintiffs are entitled to an award of reasonable attorneys' fees and costs pursuant to jurisdiction under 42 U.S.C. Section 1983, Section 504 and the ADA.

92. Plaintiffs are entitled to recover the attorneys' fees and expenses incurred in the prosecution of the instant litigation, and seek to recover such fees and costs accruing throughout the course of this litigation.

93. Plaintiffs seek to recover all fees and costs incurred in the pursuit of this litigation, including all work performed which is necessary to effectuate Plaintiffs' award, such as filing fees, and expert witnesses, if necessary.


## VI.   RELIEF SOUGHT

WHEREFORE, Plaintiffs' respectfully request that this Honorable Court:

1.  Award Plaintiffs' request for the immediate issuance of a Preliminary
    Injunction in order to allow Plaintiff Miriam Rovner to remain in her

home without the threat of discharge on December 20, 2011, and thereafter.

2. Award Plaintiffs' request for the immediate issuance of a Temporary Restraining Order against the Defendants in order to prevent Defendants KHS from discharging Plaintiff Miriam Rovner from her home on or after December 20, 2011, and to enjoin  DPW Defendants from permitting KHS to discharge Miriam due to their claim of now being an 'unwilling provider."

3. Award Plaintiffs' request for the immediate issuance of a Temporary Restraining Order against the Defendants in order to prevent Defendants KHS from continuing to retaliate against Miriam's parents and to cease and desist from threatening Miriam's parents with her discharge from her home due to their involvement.

4. Award Plaintiffs' request for injunctive relief to allow Miriam's parents full access to Miriam in her home operated by KHS.

5. Award Plaintiffs their court costs, litigation expenses, reasonable attorney's fees that were and are necessary for the preparation and prosecution of this litigation;

6. Award any additional relief as may be just, proper and equitable.

Respectfully submitted,

**HUSIC LAW OFFICE**

**By**:   <u>s/Yvonne M. Husic, Esquire</u>
Yvonne M. Husic, Esquire
PA Attorney ID# 74444
2215 Forest Hills Drive, Suite 35
Harrisburg, PA  17112
(717) 236-4282
(717) 236-1323 Fax

Dated:  December 17, 2011          email: <u>ymhusic@aol.com</u>

AND

<u>*s/Judith A. Gran*_____</u>
Judith A. Gran, Esquire
Reisman Carolla Gran, LLP
Atty ID No. 40134
19 Chestnut Street
Haddonfield, NJ 08033-1810
t 856-354-0061
f 856-873-5640
email: <u>jgran@reismancarolla.com</u>

**Attorneys for Plaintiffs**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MIRIAM ROVER, individually, and<br>   through her Next Friends,<br>   NEIL AND NINA ROVNER; and | : *Electronically Filed*<br>:<br>:<br>: |
| NEIL and NINA ROVNER,<br>   Individually, | : No. ___ CV - 2011<br>:<br>: |
|       PLAINTIFFS | :<br>: |
| v. | :<br>: |
| KEYSTONE HUMAN SERVICES | :<br>: |
| DENNIS W. FELTY, President<br>   Keystone Human Services<br>   (KHS) | :<br>:<br>:<br>: |
| CHARLES J. HOOKER, III<br>   Senior Vice President, KHS,<br>   CEO, KHSI | :<br>:<br>:<br>: |
| JANET K. KELLEY, VP, Quality<br>   And Clinical Services, KHS,<br>   Senior VP, Operations, KSS | :<br>:<br>:<br>: |
| ANN H. MOFFITT, CEO,<br>   Keystone Partnership; VP<br>   Community Development, KHS | :<br>:<br>:<br>: |
| MICHAEL POWANDA, Executive<br>   Director, KHS | :<br>:<br>: |
| PATRICIA SIPE, CEO, Keystone<br>   Children & Family Services | :<br>:<br>: |
| ANN MARIE MELLETT,<br>   Group Home Services Director, KHS | :<br>:<br>: |
| JOLENE FOGELSANGER,<br>   Program Director, KHS | :<br>:<br>: |

|  | : |
|---|---|
|  | : |
| **AND** | : |
|  | : |
| **DEPARTMENT OF PUBLIC WELFARE** | : |
|  |  |
|  | : |
| **GARY D. ALEXANDER,** | : |
|    **Secretary, Department of** | : |
|    **Public Welfare, individually** | : |
|    **And in his official capacity** | : |
|  | : |
| **KEVIN FRIEL, Deputy Secretary,** | : |
|    **Office of Disability Programs,** | : |
|    **Individually and in his official** | : |
|    **Capacity** | : |
|  | : |
| **JOHN WITTE, Director, Central** | : |
|    **Regional Office of Disability** | : |
|    **Programs** | : |
|  | : |
| **DEFENDANTS** | : **JURY TRIAL DEMANDED** |

## CERTIFICATE OF SERVICE

I hereby certify that I served a true and correct copy of the foregoing Complaint upon the Defendants via 1st Class Mail, as follows:

Keystone Human Services
c/o Dennis Felty, President
940 East Park Drive
Harrisburg, PA  17111


And


Department of Public Welfare – Chief Counsel
P.O. Box 2675
Harrisburg, PA  17105

s/Yvonne M. Husic, Esquire
Yvonne M. Husic, Esquire
HUSIC LAW OFFICE
PA Atty ID No. 74444
2215 Forest Hills Drive, Ste. 35
Harrisburg, PA  17112-1099
(717)236-4282

Dated:  December 17, 2011

AND

s/Judith A. Gran_____
Judith A. Gran, Esquire
Reisman Carolla Gran, LLP
Atty ID No. 40134
19 Chestnut Street
Haddonfield, NJ 08033-1810
t 856-354-0061
f 856-873-5640
email: jgran@reismancarolla.com

***Attorneys for Plaintiffs'***